UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

HOLIDAY VILLAGE EAST HOME
OWNERS ASSOCIATION, INC.,

       Plaintiff,

  v.

QBE INS CORP., QBE INS. GROUP,
LTD., and COMMUNITY
ASSOCIATION UNDERWRITERS OF
AMERICA, INC.,

       Defendants.

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 11-5765
(JEI/JS)

**OPINION**

**APPEARANCES:**

HEINE ASSOCIATES, P.A.
By: I. Michael Heine, Esq.
1008-F Astoria Blvd.
Cherry Hill, NJ 08003
    Counsel for Plaintiff

LESTER SCHWAB KATZ & DWYER, LLP
By: Aaron Brouk, Esq.
24 Lackawanna Plaza
Millburn, NJ 07041
    Counsel for Defendants

**IRENAS**, Senior District Judge:

    Plaintiff Holiday Village East Home Owners Association, Inc. initiated this action for a declaratory judgment and damages following Defendants' denial of coverage under a property insurance policy for damage to the Clubhouse roof.[1]  Pending

---

[1] The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

1

before the Court is Defendants' Motion to Dismiss the First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).[2]

## I.

Plaintiff is a not-for-profit corporation formed to own, maintain, and administer the community properties and facilities of a planned retirement community known as Holiday Village East. (Compl. ¶ 1.) Plaintiff is the owner of a Clubhouse, which has a roof structure consisting of wooden trusses. (*Id.* ¶¶ 5-6.)

Defendant QBE INS Corp. issued a Homeowners Association Policy, number CAU303953-1 ("the Policy"), to named insured "Holiday Village East Community Services Association, Inc."[3] Coverage under the Policy is provided for the Clubhouse.

On February 7, 2011, an independent contractor inspected the Clubhouse roof for the purpose of making a sprinkler repair. (*Id.* ¶ 9.) During the inspection, the contractor discovered "dramatic symptoms of roof truss system failure." (*Id.*) Plaintiff immediately reported the condition to its insurance broker, Hardenbergh Insurance Group. (*Id.*) On February 9, 2011, a structural engineer inspected the roof on behalf of Defendants and recommended that the Clubhouse be closed and shoring walls be

---

[2] Also pending before the Court is Defendants' Motion to Dismiss the Complaint, which was filed prior to Plaintiff's Amended Complaint. This Motion will be dismissed as moot.

[3] For the purposes of this Motion, the Court assumes that Plaintiff in the instant action is the named insured in the Policy, despite the discrepancy in their names.

immediately installed.  (*Id.* ¶ 12.)  On February 10, 2011, Plaintiff closed the Clubhouse.  (*Id.* ¶ 13.)  Following the recommendations of both Defendants' structural engineer and an independent structural engineer, shoring walls to prevent the continuing collapse of the roof trusses were installed.  (*Id.* ¶ 16.)

In a letter dated February 17, 2011, Defendants denied coverage under the Policy, citing the absence of a "collapse." (*Id.* ¶ 17.)  On August 17, 2011, Plaintiff commenced the instant action in the Superior Court of New Jersey, Burlington County, seeking a declaration that the replacement costs of the Clubhouse roof structure are payable to Plaintiff under the terms of the Policy and seeking damages in the amount of $600,000 to $750,000.

On October 4, 2011, Defendants removed the Complaint to this Court.  On October 28, 2011, Defendants filed a Motion to Dismiss the Complaint.  On November 4, 2011, Plaintiff filed an Amended Complaint.  On November 18, 2011, Defendants filed a Motion to Dismiss the Amended Complaint.

## II.

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted."  In order to survive a motion to dismiss, a complaint must allege facts that raise a right to relief above the speculative level.  *Bell Atlantic Corp. v.*

3

*Twombly,* 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2).

While a court must accept as true all allegations in the plaintiff's complaint, and view them in the light most favorable to the plaintiff, *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008), a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). The complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible. *Phillips*, 515 F.3d at 234. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

When evaluating a Rule 12(b)(6) motion to dismiss, the Court considers "only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of America*, 361 F.3d 217, 221 n.3 (3d Cir. 2004). A document that forms the basis of a claim is one that is "integral to or explicitly relied upon in the complaint." *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.

1997)).

### III.

Defendants move to dismiss the Amended Complaint arguing that Plaintiff cannot allege a "collapse" within the meaning of the Policy. Thus, this Court must examine the allegations in the Amended Complaint in light of the Policy provisions regarding "collapse."

The Policy has a general exclusion for loss or damage caused by or resulting from "collapse," except as provided in section IV.A., "collapse coverage." (Walsh Dec. Ex. A at III.B.2.d.) The "collapse coverage" section provides for Policy coverage for "direct physical loss or damage to 'covered property' if the 'collapse' is caused by" certain defined events. (*Id.* at IV.A.)

The Policy defines "collapse" as "an abrupt falling down, caving in or flattening of a building or structure with the result that the building, structure or the collapsed part of either cannot be occupied for its intended purpose." (*Id.* at XXVIII.11.) According to the Policy, "[a] building, structure or any part of either that is in danger of falling down or caving in is not considered to be in a state of collapse." (*Id.* at XXVIII.11.a.) This is true even if the structure has been "[d]eclared by civil authority or by a person technically qualified to do so to be in an imminent state of collapse" or "condemned for occupancy" or "evacuated in anticipation of

5

collapse." (*Id.* at XXVIII.11.a.1-3.) Any structure, building or part of either that is standing, notwithstanding evidence of "cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion," is not considered to be in a state of collapse. (*Id.* at XXVIII.11.c.1)

The Amended Complaint alleges that "[a]t the time the roof and supporting truss system failure was discovered, it was in a state of imminent collapse (i.e. ready to take place and near at hand) and was collapsing as defined in the Policy Definition." (Compl. ¶ 14.2.) Despite Plaintiff's conclusory allegations that the roof "was collapsing" within the meaning of the Policy, the factual allegations in the Amended Complaint belie the existence of "an abrupt falling down, caving in or flattening" of the Clubhouse roof or its wooden truss system.

First, Plaintiff was unaware of the roof truss system failure until a contractor performing an attic visit for the purpose of making a sprinkler repair alerted Plaintiff to the condition. (*Id.* ¶ 9.) This factual allegation is incompatible with an assertion that the Clubhouse roof or its truss system had abruptly fallen down, caved in or flattened, which would presumably have been a readily apparent condition. As noted above, the Policy expressly excludes from coverage any structure "in an imminent state of collapse" or one that has been "condemned for occupancy" or "evacuated in anticipation of

6

collapse."

The Amended Complaint alleges that shoring walls were installed "to prevent the continuing collapse of the roof trusses." (*Id.* ¶ 16.) Had the roof abruptly fallen down, caved in or been flattened, shoring walls would have been unnecessary. Any evidence of cracking, bulging, sagging or bending of the Clubhouse roof or of its trusses which might have necessitated the installation of shoring walls is also expressly excluded from the definition of "collapse," provided the building, structure or part of either is still standing. (*See* Walsh Dec. Ex. A. at XXVIII.11.c.1.) While Plaintiff alleges that the roof truss system failed, there is no allegation that the roof or its trusses abruptly fell down, caved in or was flattened, as is required for coverage of the roof replacement costs under the Policy.

Plaintiff's Opposition relies on a semantic argument that the Amended Complaint alleges caving in and flattening as conditions in progress which were "prevented from the denouement of rubble by shoring walls." (Pl's Opp. at 10.) This argument is unavailing. A "collapse" within the meaning of the Policy is "an *abrupt* falling down, caving in or flattening." (*See* Walsh Dec. Ex. A. at XXVIII.11)(emphasis added). Plaintiff's use of the present participles "caving" and "flattening" to "describe a condition in progress" is incompatible with the Policy language

7

requiring an *abrupt* falling down, caving in or flattening of the Clubhouse roof or its trusses.[4]

Because the Amended Complaint fails to allege a collapse of the Clubhouse roof or its truss system within the meaning of the Policy, Defendants' Motion to Dismiss the First Amended Complaint will be granted.

**IV.**

For the reasons stated above, Defendants' Motion to Dismiss the First Amended Complaint will be granted.  Defendants' Motion to Dismiss the Complaint, filed prior to Plaintiff's Amended Complaint, will be dismissed as moot.  An appropriate Order accompanies this Opinion.


Dated: December  19 , 2011


 s/Joseph E. Irenas 
**JOSEPH E. IRENAS, S.U.S.D.J.**

---

[4] Where the policy expressly defines "collapse" there is no ambiguous term for the court to construe and it should merely apply the policy's definition of the term.  *See Duddy v. Gov't Emp. Ins. Co.*, 421 N.J. Super. 214, 218 (App. Div. 2011)(quoting *Longobardi v. Chubb Ins. Co.*, 121 N.J. 530, 537 (1990))("the words of an insurance policy should be given their ordinary meaning, and in the absence of an ambiguity, a court should not engage in a strained construction to support the imposition of liability"); *see also Fantis Foods, Inc. v. North River Ins. Co.*, 332 N.J. Super. 250, 260 (citing *Ercolani v. Excelsior Ins. Co.*, 830 F.2d 31, 34-35 (3d Cir. 1987))(noting that under New Jersey law, a collapse provision "*without any narrowing internal definition*" should be construed to include serious impairment and imminent collapse)(emphasis added).